IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-60825
Summary Calendar
_____


DARRELL F ALESSI,

                                        Petitioner,

        v.

FEDERAL AVIATION ADMINISTRATION,

                                        Respondent.

_____

On Petition for Review of an Order of the
National Transportation Safety Board
(SA-95-CA-533)
_____
June 17, 1997
Before KING, JOLLY, and STEWART, Circuit Judges.

PER CURIAM:[*]

    Darrell Alessi seeks review of the National Transportation

Safety Board's order revoking his Airline Transport Pilot

certificate, Mechanic certificate, and Flight Engineer

certificate.  Finding no error, we deny the petition for review.

I. BACKGROUND

A. *Statement of Facts*

---

    [*]Pursuant to Local Rule 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

In March 1994, Alessi applied for a position as a flight officer with Polar Air Cargo ("Polar Air"), a new cargo transport company.  Polar Air was seeking pilots who were qualified to operate the Boeing 747 aircraft and, more specifically, pilots who were FAR Part 121 qualified within the past year with a U.S. carrier.  In his cover letter, Alessi stated that he was "at present FAR#121 current on the B-747."  Alessi included with his application a reproduction of his ostensible FAA-issued Airline Transport Pilot ("ATP") certificate, which was dated March 17, 1980.  The pilot certificate referenced the following ratings:

```
AIRPLANE, MULTIENGINE LAND
CE-500 LEARJET B707 B727 B747 sa
COMMERCIAL PRIVILEGES
AIRPLANE SINGLE ENGINE LAND
```

Upon review of Alessi's credentials, Robert Holman, the person in charge of recruiting pilots and evaluating employment applications for Polar Air, decided that Alessi was not immediately qualified for a piloting position because of his limited flying time in the prior year.  Holman did, however, place Alessi's application in a second tier of applications, to be considered for employment if the positions available were not filled from first tier applicants.

During the hiring process, Evan Wood, the Principal Operations Inspector for Polar Air, obtained a list of applicants being considered for piloting positions from Holman and cross-checked the applicants' qualifications against FAA records.  At

2

that time, Wood discovered that Alessi was not qualified to operate the Boeing 747.  Alessi's pilot certificate, which was issued March 15, 1980, was limited to the following ratings:

        AIRPLANE, MULTIENGINE LAND
        CE-500
        COMMERCIAL PRIVILEGES
        AIRPLANE SINGLE ENGINE LAND

At a hearing held before an administrative law judge ("ALJ"), Alessi stipulated that he does not hold ratings issued by the FAA for the Boeing 747, 727, and 707 aircraft.  He claims, however, that the Saudi Arabian aviation authority issued him those ratings when he worked there in the early 1980s.  He claims that the Saudi Arabian government required him to surrender his FAA pilot certificate and issued him a Saudi Arabian certificate.  When Alessi returned to the United States, he testified, he applied for and received a duplicate FAA pilot certificate.

Martin Ingram, a former supervisor in the FAA's New York Flight Standards International Field Office, testified on behalf of the Administrator.  Ingram's duties at the New York office entailed oversight of the Saudi Arabian airman certificate program.

Ingram testified that Saudi Arabia would never issue a pilot certificate to a foreigner unless the person applying already had a certificate from a country with aviation programs approved by the Saudi Arabian government.  Ingram noted that because Alessi

3

had never received FAA-issued type ratings for the Boeing 747, 727, and 707, the Saudi Arabian government would not have given Alessi a certificate with type ratings for those aircraft. Furthermore, Ingram testified that the Saudi Arabian government would never write anything on a U.S. certificate; nor would the FAA ever place the letters "sa," ostensibly standing for Saudi Arabia, on an ATP certificate.

*B. Procedural History*

In December 1994, based on reports of Alessi's altered ATP certificate, the Administrator of the FAA issued an emergency order revoking Alessi's ATP, Mechanic, and Flight Engineer certificates pursuant to sections 609(a) and 1005(a) of the Federal Aviation Act, 49 U.S.C. app. §§ 1429(a), 1485(a), recodified at 49 U.S.C. §§ 44709, 46105 (1994). The Administrator concluded that Alessi violated Federal Aviation Regulation ("FAR") section 61.59(a)(3), 14 C.F.R. § 61.59(a)(3) by reproducing, for a fraudulent purpose, an airman certificate or rating. The Administrator also found that Alessi's conduct demonstrated that he lacked the care, judgment, and responsibility required of a certificate holder. On April 25, 1995, the Administrator timely amended his emergency order of revocation to add a charge against Alessi for violating FAR section 61.59(a)(4) by altering an airman certificate or rating.

Alessi appealed the emergency order of revocation to the

4

National Transportation Safety Board ("NTSB"), and a hearing was held before an ALJ in October 1995.  The ALJ found that Alessi had violated FAR section 61.59(a)(4), but that he had not violated FAR section 61.59(a)(3).  The ALJ reduced the order of revocation to a suspension for a period of twelve months and applied the suspension only to Alessi's ATP certificate.

Both the Administrator and Alessi appealed the ALJ's decision to the NTSB.  The NTSB granted the Administrator's appeal and denied Alessi's.  The NTSB held that Alessi had violated both FAR sections 61.59(a)(3) and (4) and thus reinstated the order of revocation.  Alessi timely petitioned this court for review of the NTSB's order.

## II. DISCUSSION

Judicial review of NTSB decisions is governed by 5 U.S.C. § 706(2)(A), which provides that a reviewing court shall uphold agency decisions unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  The NTSB's factual findings are conclusive when supported by substantial evidence in the record.  49 U.S.C. app. § 1486(e).  Under the substantial evidence test, the court must determine whether "the agency could fairly and reasonably find the facts as it did."  Chritton v. NTSB, 888 F.2d 854, 856 (D.C. Cir. 1989).

The regulation at issue states in part:

> § 61.59   Falsification, reproduction, or alteration of applications, certificates, logbooks, reports, or records

5

        (a) No person may make or cause to be made-
            (3) Any reproduction, for fraudulent purpose, of any
            certificate or rating under this part; or
            (4) Any alteration of any certificate or rating under
            this part.

In holding that Alessi had not violated FAR § 61.59(a)(3), the

ALJ found that the Administrator had not proved the fifth element

of fraud: that action was taken in reliance upon Alessi's false

representation.  Reversing the ALJ on this ground, the NTSB

stated that the fifth element of fraud is not necessary to prove

a violation of § 61.59(a)(3).  Citing <u>Administrator v. Borregard</u>,

NTSB Order No. EA-3863, 1993 WL 128013, <u>aff'd</u>, 46 F.3d 944 (9th

Cir. 1995), the NTSB made a distinction between a fraudulent act

and a fraudulent purpose.

    To prove that a fraudulent act has occurred, one must prove

all five elements of fraud: (1) a false representation, (2) in

reference to a material fact, (3) made with knowledge of its

falsity, (4) and with the intent to deceive, (5) with action

taken in reliance upon the representation.  <u>Hart v. McLucas</u>, 535

F.2d 516, 519 (9th Cir. 1976)(concluding that all five elements

of fraud must be satisfied to sustain a conviction for the making

of a fraudulent entry in a logbook, but only the first three

elements of fraud must be satisfied to sustain a conviction for

making an intentionally false entry in a logbook).  However, to

prove that a person has acted with a fraudulent purpose, one need

only prove the first four elements of fraud.  <u>Borregard v.</u>

<u>National Transp. Safety Bd.</u>, 46 F.2d 944, 946 (9th Cir.

6

1995)(treating a regulation prohibiting alteration of maintenance records for fraudulent purposes as an attempted fraud provision). The NTSB correctly reversed the ALJ's finding that Alessi had not violated § 61.59(a)(3) because it was not necessary to find that action had been taken in reliance upon Alessi's false representation to find that Alessi acted with a fraudulent purpose, in violation of § 61.59(a)(3).

Alessi contends that there is insufficient evidence to support the NTSB's determination that he violated FAR §§ 61.59(a)(3) & (4). This argument is without merit.

Alessi sent Polar Air an alleged copy of his FAA certificate which listed three type ratings he had never earned. Alessi argues that although the FAA never gave him the ratings at issue, the Saudi Arabian government did. At the hearing, Alessi explained that "what I did is I superimposed my other [alleged Saudi Arabian] ratings on [the copy of the ATP certificate], and the mistake I made was not sending Polar Air the certificate I held the day I applied, which was still an ATP with type ratings, but not those and not the SA on it."

The ALJ found that Alessi knowingly altered his ATP certificate to reflect ratings that he did not possess in an attempt to be hired by Polar Air. The ALJ discounted Alessi's testimony that he actually possessed these ratings. The ALJ's credibility determination is neither arbitrary nor capricious and is amply supported by the record.

7

## III. CONCLUSION

For the foregoing reasons, the petition for review is DENIED.